AO 102 (01/09)  Application for a Tracking Warrant

ORIGINAL

# UNITED STATES DISTRICT COURT
for the
District of Hawaii

**SEALED**
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 0 7 2016

at 4 o'clock and 05 min. P M
SUE BEITIA, CLERK

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>SILVER LEXUS SEDAN, LICENSE PLATE NUMBER<br>SRN395 VIN # JTHCK262X72011015 | ) <br> ) <br> ) <br> ) <br> ) |

Case No.   Mag. No. 16-1227 BMK

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of
__18__ U.S.C. § __1113__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location.  The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
at or around 94-542 Kupuohi St., #204; and at or around 1550 Santos Dumont Ave., Wheeler AAF, HI, 96854.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TRACY DOCKERY, Special Agent, FBI
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: 10/7/16 4:00 pm

City and state: Honolulu, HI

_____
KENNETH J. MANSFIELD, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF SILVER LEXUS SEDAN, LICENSE PLATE NUMBER SRN395, VIN # JTHCK262X72011015 | Case No. 16-1227 BMK<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, TRACY DOCKERY, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a silver Lexus 4-door sedan bearing license plate number SRN395 and vehicle identification number JTHCK262X72011015 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is currently being used in furtherance of violations of 18 U.S.C. § 1113 (Attempt to commit murder within the special maritime and territorial jurisdiction of the United States); 18 U.S.C. § 1114 (Attempt to kill any officer or employee of the United States); and 18 U.S.C. § 115 (Threatening a federal official); and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2.    I am a Special Agent with the FBI, and have been since January 2010. I am currently assigned to the Counterterrorism Squad and was formerly assigned to the Criminal Enterprise Squad of the Honolulu Division of the FBI. As a result of my training and experience

as an FBI Agent, I am familiar with federal and state criminal laws. My primary duties have been the enforcement of counterterrorism matters and criminal matters, to include matters of domestic and international terrorism. I have interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to determine methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. In past criminal investigations I have used court-authorized search warrants for the installation of tracking devices on vehicles to assist physical surveillance, determine patterns of life, and observe criminal activity.

3.      My experience as an FBI Special Agent includes, but is not limited to, counterterrorism investigations, investigations of narcotics, violent crimes, gangs, bank robberies, organized crime, child pornography, illegal gambling, and money laundering. I am experienced in evidence collection, physical surveillance, interviews of witnesses, the use of search warrants, and the use of informants.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## PROBABLE CAUSE

5.      On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

6.      On May 15, 2014, the Secretary of State amended the designation of AQI as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under Section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name.  The Secretary also added the following aliases to the ISIL listing:  the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production.  On September 21, 2015, the Secretary added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS.  To date, ISIL remains a designated FTO.

7.      U.S. Army Staff Sergeant Ikaika Erik Kang ("KANG") is trained as an air traffic controller.  KANG is assigned to the 25th Infantry Division, Combat Aviation Brigade.  In August 2016, a Confidential Source ("CS1") observed KANG watching videos at KANG's residence, 94-542 Kupuohi St. #204, Waipahu, Hawaii.  KANG invited CS1 into his room and told him the videos depicted ISIL fighters.  KANG was excited to share the videos with CS1.  KANG told CS1 that he admired suicide bombers and their sacrifice, describing them as fearless.  KANG showed CS1 such videos three times in August 2016 and twice in September 2016.

8.      CS1 remembered one video that depicted a row of men in a warehouse hanging upside down by shackles around their ankles.  An ISIL member walked by and cut off their

heads.  Another video depicted what appeared to be a child soldier with a gun, killing a row of

men.  CS1 relayed that KANG was especially excited to show CS1 a beheading video of a row

of men kneeling while having their heads cut off.  In my training and experience, beheadings of

this nature are a common execution method used by ISIL.  In my training and experience, it is

common for ISIL to produce videos of this nature as propaganda to recruit followers to further its

cause, including by committing acts of violence.  CS1 remembered feeling sick to his stomach,

while KANG laughed and insulted the victims.

9.      CS1 described KANG as "obsessed" with the videos, which are of beheadings,

shootings, suicide bombings, fighting, and other ISIL violence.  CS1 said that KANG watches

these videos approximately four to five hours each day during the week, and probably more on

the weekends.

10.      During the first week of September 2016, CS1 recalled KANG telling him that if

he were to do something like shoot up a large gathering, it would be out of his hatred for white

people, the wicked, and non-Muslims.  KANG further stated that it "would be for the cause."  In

my training and experience, KANG's comment about acting "for the cause" means committing

an act of violence on behalf of ISIL.

11.      On or about the first or second week of September 2016, at KANG's residence

after KANG had returned home from work, CS1 observed that KANG was angry.  CS1 asked

KANG how his day was, and KANG told CS1 that he had discussed ISIL with a fellow soldier

who supported ISIL's mission to fight common enemies of the United States, but did not support

ISIL's general mission and violence.  KANG told CS1 that he was angry because the fellow

soldier "had no idea" and deserved to die because he "didn't understand."  KANG told CS1 that

he wanted to go back to work and shoot him.  CS1 suggested KANG might get arrested and

4

maybe just beating him up was a better alternative, and KANG laughed and said "Nope, I just want to end him."

12.     On or about the last week in September 2016, KANG discussed with CS1 shootings at a shopping mall that had killed six people.[1]  KANG told CS1 that if KANG were to have done it, KANG would have killed a lot more people because he could get more shots off, and he would have waited until they were all gathered together.  KANG told CS1 that if the movie "The Purge" were real, he would pick up an "asshole military guy," toss a grenade at him, and blow him up.[2]  KANG later told CS1 that he does not have any friends, but if he had a group of friends, they would be like KANG and would go out killing people.

13.     CS1 is aware that KANG has a firearm in a safe in KANG's closet.  Based on CS1's interactions with KANG, CS1 is afraid for his safety when around KANG, specifically, he is afraid because he does not want to become "victim number 1."

14.     Review of state firearms registration records by the FBI shows that KANG is the registered owner of two firearms, including a .40 Caliber Smith & Wesson M&P handgun and an 5.56mm Smith & Wesson M&P15 (AR-15 style) rifle.

15.     Another individual, CS2, who works with KANG, noticed an increase in KANG's discussions of radical Islam during the beginning of September 2016.  CS2 has heard KANG talk about religion, anti-government topics, and ISIL.  On one occasion, when CS2 and KANG were

---

[1] Your affiant believes this incident is actually referring to an attack at a shopping mall in St. Cloud, Minnesota on September 17, 2016, during which a lone attacker stabbed 10 people with steak knives, causing serious injury.  The attacker was killed by law enforcement.

[2] "The Purge" is an American dystopian horror film-series that is about a 12-hour period each year, during which all crime is legal and all emergency services are unavailable.  The film series depicts widespread, notably graphic violence and murder.

in the car together, KANG was playing an audio recording of an Arabic speaker through the car stereo using his cellular telephone. When CS2 asked KANG what he was listening to, KANG stated that he was listening to a prophet reciting the Quran. KANG further stated that the speaker had been killed in the early 2000's, but KANG could not remember if he had been killed by a bomb or was a suicide bomber.

16.     Based on the foregoing, there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of individuals who are engaged in the commission of those and related crimes. KANG is the registered owner of two firearms, one of which is an AR-15 rifle. KANG can use the SUBJECT VEHICLE to transport his firearms to and from his workplace, which is on a military base. KANG can use the SUBJECT VEHICLE to store and conceal his firearms while he is at work, which would enable him to prepare for and conduct a violent attack against military personnel at a time and place of his choosing in violation of 18 U.S.C. § 1113 (Attempt to commit murder within the special maritime and territorial jurisdiction of the United States) and 18 U.S.C. § 1114 (Attempt to kill any officer or employee of the United States). The SUBJECT VEHICLE is therefore an instrumentality of the aforementioned crimes, and there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE will lead to evidence of the aforementioned crimes.

17.     More basically, KANG's whereabouts constitute evidence of the aforementioned crimes, and the tracking device will allow (and is necessary for) law enforcement to know his whereabouts. The FBI is currently engaging in visual surveillance of KANG, in coordination with military law enforcement authorities.. That joint surveillance effort is to provide coverage

6

both on-base and off-base.  A tracking warrant is necessary to preserve the continuity and

integrity of that surveillance because, in my training and experience, occasionally visual

surveillance of this nature has gaps in coverage.  In addition, a vehicle tracker allows FBI to

maintain a greater distance from the SUBJECT VEHICLE and therefore, avoid detection.

Based on my training and experience, if KANG were to become aware of the FBI and military

visual surveillance, he is likely to attempt to evade surveillance, conceal or destroy evidence, or

react violently.  A tracking warrant is therefore necessary to enable law enforcement to

continuously observe KANG while also preventing KANG from becoming aware of the

surveillance, which in turn would likely lead to the destruction of evidence.

      18.     Based on the observations of other agents who have seen the subject vehicle, as

well as a search of the Department of Motor Vehicle ("DMV") database, I know that the

SUBJECT VEHICLE is currently registered within the District of Hawaii, and is owned by

KANG.

      19.     In order to track the movement of the SUBJECT VEHICLE effectively and to

decrease the chance of detection, I seek authorization to place a tracking device on the SUBJECT

VEHICLE while it is in the District of Hawaii. Because KANG sometimes parks the SUBJECT

VEHICLE in driveways and on other private property, it may be necessary to enter onto private

property and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement,

and removal of the tracking device.  I seek authorization to do so at or around KANG's

residence, 94-542 Kupuohi St. #204, and at or around KANG's workplace, 1550 Santos Dumont

Ave, Wheeler AAF, Hawaii 96854, because law enforcement officers have observed KANG's

vehicle parked at these locations recently.

20.     To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours.  As described above, KANG possesses two firearms and has expressed a desire to kill people, including military service members.  Law enforcement has observed KANG's vehicle parked in a location visible from KANG's residence during daylight hours, which would be less visible from KANG's residence during nighttime hours.

21.     In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device.  The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of Hawaii within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter at or around KANG's residence, 94-542 Kupuohi St. #204, and at or around KANG's workplace, 1550 Santos Dumont Ave, Wheeler AAF, Hawaii 96854, and/or move the SUBJECT VEHICLE to effect the installation, repair,

8

replacement, and removal of the tracking device; and to monitor the tracking device for a period

of 45 days following the issuance of the warrant, including when the tracking device is inside

private garages and other locations not open to the public or visual surveillance, both within and

outside the District of Hawaii.

23.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure

41(f)(3), I further request that the warrant delay notification of the execution of the warrant for

30 days after the end of the authorized period of tracking (including any extensions thereof)

because there is reasonable cause to believe that providing immediate notification may have an

adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously

jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects

an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential

witnesses, notify confederates, and change patterns of behavior.

24.     I further request that the Court seal the warrant and the affidavit and application in

support thereof, except that copies of the warrant in full or redacted form may be maintained by

the United States Attorney's Office and may be served on Special Agents and other investigative

and law enforcement officers of the FBI, federally deputized state and local law enforcement

officers, and other government and contract personnel acting under the supervision of such

investigative or law enforcement officers, as necessary to effectuate the warrant. These

documents pertain to and discuss an ongoing criminal investigation that is neither public nor

known to all the targets of the investigation. Accordingly, there is good cause to seal these

documents because their premature disclosure may seriously jeopardize the investigation.

Sealing these documents will also better ensure the safety of agents and others.

9

Respectfully submitted,

_____

Tracy Dockery
Special Agent
FBI

Subscribed and sworn to before me on ____10/7____, 201 6

_____

KENNETH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

10